## THOMAS ELSBERRY v. THE STATE.

1. PLAYING AT CARDS.—To support a conviction for playing at cards at a public house or public place not mentioned in the terms of the law, it must be so averred in the indictment, and the facts and circumstances relied upon making it public must be set forth.

2. See facts held sufficient to sustain a verdict for gaming at a public place other than those named in the statute.

APPEAL from Falls.  Tried below before the Hon. J. H. Banton.

*West & Prather* and *Walton, Green & Hill,* for appellant.

*George Clark, Attorney General,* for the State.

REEVES, ASSOCIATE JUSTICE.—The indictment charges Thomas Elsberry with playing at a game of cards in a public place, in view of the highway, in Falls county.  The defendant was tried and convicted and fined ten dollars. There was a motion for a new trial and motion in arrest of judgment; the first on the ground that the verdict of the jury was contrary to the law and the evidence, and because the court erred in the charge to the jury, and the other because of the alleged insufficiency of the indictment to support the verdict and judgment, and because the indictment charged no offense against the law.  Both motions were overruled, and the defendant appealed.

The indictment, as we have said, charges the defendant with playing the game at a public place in view of the highway, and the question on the motion in arrest of judgment is, whether the playing at such place is prohibited by the code. In Bledsoe v. The State, 21 Tex., 223, it is said: "A place may be public all the time, as a street, public square in a town, and the like. It may be public for the time being only, by the congregation of a number of people, as at a muster-ground, a race-course, or a camp-meeting or the like, or a place in the woods where a number of persons had notoriously congregated for the purpose of gaming, or a place in the woods notorious as a resort for gaming." Certain houses and certain places are declared by the statute to be public, and in such cases they are to be regarded as public as matter of law, of which the court would take notice without any averment of their character as such, as a house for retailing spirituous liquors, store-house, &c., or any street or highway. If the playing was at some other public house or public place, not mentioned in the terms of the law, it must be averred in the indictment, and the facts and circumstances relied upon making it public must be set forth; and in such case it is a question of fact whether it is public or not, to be decided by the jury, under instructions by the court, defining the meaning of a public house or a public place, as the case may be. (State v. Alvey, 26 Tex., 155.) As expressed by the court in Parker v. The State, 26 Tex., 204, it is a mixed question of law and fact, to be submitted to the jury under the instructions of the court. A public place, in the language of this case, "does not mean a place devoted solely to the uses of the public, but it means a place which is, in point of fact, public, as distinguished from private—a place that is visited by many persons, and usually accessible to the neighboring public."

It is not shown in what respect the charge of the court is erroneous. It was not excepted to at the time it was

given, nor was any counter or further charge asked by the defendant. The court charged the jury at considerable length, defining the places in which card playing is prohibited, and the places not prohibited, such as a private residence, unless it was used as a common resort for gaming. The question was fairly presented to the jury for decision, "whether the playing was in the defendant's residence, and if it was, whether it was public or private, or whether the playing was in the full view of the neighboring public traveling on the road usually traveled by the people of the neighborhood."

It appears from the evidence that the defendant, with four or five other parties, were in the employ of the witness, Hemphill, as teamsters, hauling rock from the quarry to the Brazos river, where a bridge was in course of erection; that the tent where the parties were seen playing the cards was about twenty feet from the road and in plain view of it. One witness testified that his own family and other families in the neighborhood used the road, and passed it frequently in going to church and elsewhere, and that the road at the time of the playing was frequently used by persons hauling their cotton, &c. This witness states that he had seen card playing in this tent fifteen or twenty times within three or four months; that the ends of the tent were open, and that he could see into it when passing along the road; that he saw card playing there every time he passed along the road. The witness, Hemphill, stated that the defendant lived at the tent from March until August; that the defendant and the other hands eat under the arbor a short distance from the tent and slept in the tent; that he had seen the defendant and other employees play cards several times—perhaps twenty times—on rainy days and in leisure hours, and had known of two other persons playing with the hands once or twice; never knew of any betting, &c. The first witness says he had seen playing there on two Sundays. There was other evi-

dence showing substantially the same facts in part, and no material conflict in the evidence.

We find no error in the charge of the court, and none has been pointed out. The evidence supports the verdict of the jury, and the case comes within the class of cases in which this court has said, " The object of the law is to prevent gaming at places which are within the observation of persons indiscriminately, because of the consequences resulting from the evil example."

The judgment is affirmed.

Affirmed.