### MANLY TURNER *v.* THE STATE.

1. LOST INDICTMENT — SUBSTITUTION. — To supply by substitution the loss of an indictment, the record of the court must not only show the suggestion of loss and the leave to substitute, but also that the substitution has in fact been made. Presumptions cannot be indulged to verify the substituted indictment; but the record-entries may be amended *nunc pro tunc*, even at a subsequent term.

2. THEFT — ALLEGATION AND PROOF OF OWNERSHIP. — Indictment for theft of cattle alleged the ownership to be in one F., who testified that the animals, though the property of his sister, were, when taken, in his possession and care, and under his control, with full authority to sell them, and that he held a power of attorney from his sister; but the power of attorney was not produced. *Held,* that the ownership was well alleged to be in F., and his testimony, irrespective of the power of attorney, was admissible in support of the allegation.

3. EVIDENCE. — In a trial for theft of cattle, the proof showed that the animals in question, together with several which belonged to the defendant, were "rounded up" by him in their accustomed range, and that he there sold those which belonged to him, and left the purchaser with the entire herd. *Held,* error to exclude evidence offered by the defendant that when he sold his cattle he told the purchaser to turn the others out of the herd, and, to assist the purchaser in separating the cattle, left with him a hired hand, who, after defendant's departure, hired to the purchaser and assisted in driving off the entire herd.

APPEAL from the District Court of Burnet.    Tried below before the Hon. W. A. BLACKBURN.

The case is indicated in the opinion of the court.    The punishment assessed was two years in the penitentiary.

*Makemson & Fisher*, *W. W. Martin*, and *Foard & Thompson*, for the appellant.

WHITE, P. J.    With regard to the substitution of the indictment in this case, it is evident from the proceedings that an effort was made by the county attorney to comply with the statute providing for such substitution.    Pasc. Dig., art. 2873.    The record contains the following entry, after giving the style and number of the case: "Now, on this tenth day of April, A. D. 1877, comes the county attorney, and suggests the loss of the indictment in this cause, whereupon leave is given by the court to supply the same."    Then follows a copy of the proposed substituted indictment, with this accompanying statement, after again giving style and number: "Comes the county attorney of Burnet County, in the above styled and numbered cause, and says that the above and foregoing substituted indictment is substantially the same as the original indictment in this cause, which has been mislaid."

If it be admitted, in view of the previous decisions of our courts, that the foregoing is in substantial compliance with the practice in such cases (see *The State* v. *Adams*, 17 Texas, 232; *Graham* v. *The State*, 43 Texas, 550; and *Clampitt* v. *The State*, 3 Texas Ct. App. 638), so far as the suggestion of loss and leave to substitute is concerned, the further question suggests itself upon the record, has the indictment been in fact substituted?

In order to complete the act of substitution, the court should have gone further, and made the record speak the fact affirmatively that the substitution as proposed was made.    We are left to indulge the presumption that such

was the case, but presumptions cannot be indulged in so important a matter as the fact that an indictment really exists; for without an indictment no person in this State can be held to answer to a charge of felony. Const., Bill of Rights, sect. 1; Paso. Dig., art. 2859. Nor are we inclined to extend the authority to substitute indictments beyond the plain and legitimate construction warranted by the statute. Record evidence of the fact that the substitution has been made in compliance with the statute, must be shown, so that the record itself will speak, as it always should, the existence of every matter necessary to its entirety and verity. *Croswell* v. *Byrnes*, 9 Johns. 286.

The indictment in this case has not been substituted, because there is no order of record showing that fact; and we might content ourselves with reversing the case simply upon that ground (*Beardall* v. *The State*, 4 Texas Ct. App. 631), but, inasmuch as the record may be amended *nunc pro tunc* (*Rhodes* v. *The State*, 29 Texas, 188), we will notice, with a view to another trial, some of the many errors complained of in the assignment of errors, and argued at length in the brief of counsel for appellant, premising that such as are not specially noticed are considered by us as untenable.

Perhaps it may be well enough to remark, in passing, that the evidence establishes on the part of Fowler the actual care, management, and control, with authority to dispose of and sell the cattle, and shows such possession and ownership as would sustain the allegation that the property was his; and we consider the fact of the existence or non-existence of the power of attorney, and its introduction as proof of authority, wholly immaterial in view of the other facts proven.

The court erred in refusing to admit the testimony of Isham Good as to what transpired at the time of the sale of the cattle by defendant to Ballard. The bill of sale which defendant executed to Ballard shows that defendant

sold only fourteen head of cattle, and it is not controverted or denied that these cattle belonged to defendant and his father, and that defendant had authority to sell them. Defendant proposed to prove by Good that at the time he made the sale to Ballard he told Ballard to turn out the cattle that he had not sold him (and some of which are the cattle alleged to have been stolen), and that defendant left his hired hand, Green Turner, to aid Ballard in cutting out or separating the cattle sold from those belonging to other parties. Up to this time there is no evidence going to establish a criminal intent on the part of defendant, except the fact that the animals alleged to have been stolen were "rounded up" and in the herd driven to the place, within the limits of their accustomed range, where the sale and purchase was effected. What was said and done at the time of sale by defendant, with regard to the cattle alleged to have been stolen, was part and parcel of the transaction,—was *res gestæ*, and admissible as evidence. *Bawcom* v. *The State*, 41 Texas, 159; *Davis* v. *The State*, 3 Texas Ct. App. 91; *Williams* v. *The State*, 4 Texas Ct. App. 5. And so with regard to the other fact proposed to be proven by the witness Good, viz., that after defendant had left Green Turner at the herd to assist Ballard in separating the cattle, Green Turner hired to Ballard to aid him in driving his cattle to Hays County. Defendant was entitled to this evidence to show that though Green Turner was in his employ at the time of sale, he had hired afterwards to Ballard, and that in driving the cattle to Hays County, Green Turner was not his agent or hired hand, but was the employee of Ballard, and acting under his directions and instructions, and not under those of his former employer, the defendant.

The court also erred in refusing to charge the jury, as requested by defendant, upon the law of driving live-stock from its accustomed range under circumstances not constituting theft. The indictment in the case and the facts

established in evidence made such instructions appropriate as part of the law of the case. Pasc. Dig., art. 2410c; *Counts* v. *The State*, 37 Texas, 594; *Bawcom* v. *The State*, 41 Texas, 189; *Campbell* v. *The State*, 42 Texas, 591; *Marshall* v. *The State*, 4 Texas Ct. App. 549; *Powell* v. *The State*, ante, p. 467.

The judgment is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*